**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION**

DARRELL R. BOLDEN,

        Petitioner,

vs.

RUSTY ROGERSON,

        Respondent.

No. C02-0109-MWB

**REPORT AND RECOMMENDATION
ON PETITION FOR WRIT OF
*HABEAS CORPUS***

———————————

*TABLE OF CONTENTS*

I.    **INTRODUCTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2**

II.    **FACTUAL AND PROCEDURAL BACKGROUND IN IOWA COURTS** . . . . . **3**

III.    **PROCEDURAL DEFAULT** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **6**

IV.    **STANDARD OF REVIEW** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **8**

      **A.**    *Habeas Petitions Generally* . . . . . . . . . . . . . . . . . . . . . . . . . . . . **8**

      **B.**    *Ineffective Assistance of Counsel Claims* . . . . . . . . . . . . . . . . . . . . **10**

V.    **DISCUSSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **12**

      **A.**    *Waiver of Right to Counsel* . . . . . . . . . . . . . . . . . . . . . . . . . . . **13**

          **1.**    *Relevant facts* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **13**

          **2.**    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **39**

      **B.**    *Failure to Understand Collateral Consequences of Plea* . . . . . . . . . . . **44**

VI.    **CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **49**

# I. INTRODUCTION

This matter is before the court on the amended petition for writ of *habeas corpus* filed by the petitioner Darrell R. Bolden. Doc. No. 14. Bolden filed his petition while he was in the custody of the State of Iowa after pleading guilty to burglary charges.[1] He challenges his sentence and resulting confinement on the basis that he received ineffective assistance of trial and appellate counsel. The case has now been fully briefed and is ready for decision.

Because there have been amendments and supplements to the parties' filings in this case, the court will set forth below the relevant filings for purposes of reviewing Bolden's petition:

* Doc. No. 14, 10/31/02, Amended Petition, filed by Bolden's appointed counsel
* Doc. No. 15, 11/04/02, Bolden's *pro se* supplement to Amended Petition (duplicated at Doc. No. 17)
* Doc. No. 18, 01/02/03, respondent's Answer
* Doc. No. 19, 01/02/03, appendix of State court documents, filed by respondent
* Doc. No. 27, 06/30/03, Bolden's brief
* Doc. No. 30, 09/05/03, additional State court documents filed by respondent
* Doc. No. 31, 09/08/03, *pro se* amendment to petition (duplicated at Doc. No. 36; *see* Doc. No. 35)
* Doc. No. 32, 09/05/03, respondent's brief and appendix of additional State court documents

---

[1]The court is advised that Bolden discharged his sentence as of March 9, 2005. However, the court also is advised Bolden wishes to maintain this action on the basis that his convictions could result in sentence enhancements if he is convicted on currently pending charges. The court notes "[c]ollateral consequences are presumed to stem from a criminal conviction even after release," *Leonard v. Nix*, 55 F.3d 370, 372-73 (8th Cir. 1995), and only the possibility of collateral consequences must be present to avoid mootness. *Sibron v. New York*, 392 U.S. 40, 57, 88 S. Ct. 1889, 1899, 20 L. Ed. 2d 917 (1968). Furthermore, the respondent has not asserted a mootness challenge to Bolden's petition. Accordingly, the court will consider Bolden's petition on its merits.

\*      Doc. No. 41, 03/09/04, notice by respondent of United States Supreme Court decision in *Iowa v. Tovar*, 541 U.S. 77, 124 S. Ct. 1379, 158 L. Ed. 2d 209 (2004).

\*      Doc. No. 43, 04/07/04, Report to the Court filed by Bolden's appointed counsel

\*      Doc. No. 44, 08/27/04, Bolden's *pro se* request for instructions

\*      Doc. No. 47, 09/03/04, order directing parties to file supplemental briefs

\*      Doc. No. 55, 10/06/04, Bolden's "reply brief" filed by appointed counsel

\*      Doc. No. 58, 10/14/04, Bolden's *pro se* supplemental brief

\*      Doc. No. 59, 10/27/04, respondent's supplemental brief

On August 7, 2002, Chief Judge Mark W. Bennett referred this matter to the undersigned for review and the filing of a report and recommended disposition.  *See* Doc. No. 6.  Accordingly, the court turns to consideration of Bolden's petition.

## II.  PROCEDURAL BACKGROUND

This court adopts the summary of the procedural background of Bolden's case as set forth by the Iowa Court of Appeals in its opinion affirming the denial of Bolden's application for postconviction relief.  The Iowa Court described the proceedings below as follows:

> Bolden was initially charged with third-degree burglary in case number FECR 10687.  He was subsequently charged with another burglary count, including an habitual offender enhancement, in case number FECR 12186.
>
> Bolden filed motions requesting the court allow him to represent himself at trial with standby counsel in both cases.  Prior to granting Bolden's request, the court engaged Bolden in the following colloquy:
>
> > Q.     Mr. Bolden, anything you'd like to say on behalf of any of these matters?  A. Yeah.  I filed this pro se motion because I feel that there's been some things that haven't been addressed.  And if my counsel and the Courts

have not acknowledged the things that I've filed motions on and information to the Court, then I feel I'm in a position where I can do that and do what is necessary. So that's why I filed the motion to proceed pro se and I'm just requesting that – making the request that I be granted that so that I can address the issues that are important, you know, to me and to my – my particular set of circumstances.

. . . .

Q.     So you're asking me to allow [the court appointed Attorney] to withdraw from the case – A. Yes.

Q.     -- and you're going to take over – A. Exactly.

Q.     -- lock, stock and barrel?     A. Exactly.

. . . .

Q.     You're going to pick the jury, you're going to do all – everything a lawyer would do on your behalf?  A.  I wouldn't have filed the motion.

. . . .

Q.     Well, let me tell you this, Mr. Bolden.  I've known [the court appointed Attorney] for a long time, a lot longer than you have, --  A.  Yes.

Q.     -- and he's an excellent criminal defense lawyer.  I've had him in jury trials, I've seen him in action over the years, and I simply do not understand your allegations that he's not helping you, because I'm sure that – and I don't want to get into anything that's confidential, but I'm sure he's acting in your best interests and has in the past.  Now, you apparently disagree with me; is that right?  A.  Yes, I do.

        Q.     And you want to – you want to go
it alone?  Is that what you're telling me?  A.
Yeah.

    .  .  .  .

        Q.     All right.  I'm going to grant your
wish, Mr. Bolden.  A. Thank you.

On the morning of trial in case number FECR 10687, Bolden requested that standby counsel serve as lead counsel in case number FECR 12186, but reserved his right of self-representation in case number FECR 10687  Just prior to jury selection, Bolden withdrew his not guilty pleas and accepted a plea agreement whereby he would plead guilty to both burglary counts in exchange for the State's agreement to withdraw the habitual offender enhancement, recommend concurrent sentences, and dismiss other charges pending against Bolden.  The district court accepted the resulting guilty pleas.  Bolden's subsequent pro se motions to withdraw his guilty pleas and to arrest judgment were denied.

On direct appeal Bolden's court-appointed appellate counsel moved to withdraw, arguing Bolden's appeal was frivolous.  Appellate counsel's motion was granted, and Bolden's direct appeal was dismissed over his resistance.

In his subsequent application for postconviction relief, Bolden argued that his guilty pleas were invalid because the trial court allowed him to represent himself without deter-mining that he made a knowing and intelligent waiver of his Sixth Amendment right to counsel.  Bolden also argued that because he didn't understand the consequences of his guilty pleas, the trial court erred in denying his motion to withdraw those pleas.  Finally, Bolden challenged the effectiveness of both trial and appellate counsel.  He contended that he was denied effective assistance of appellate counsel due to counsel's failure to challenge the validity of his pleas based on the court's failure to ensure he made a knowing and intelligent waiver of counsel and the court's subsequent denial of his request to withdraw those pleas.  He also argued that trial counsel was ineffective in failing to depose and prepare critical witnesses for trial.

> The district court denied Bolden's petition for
> postconviction relief finding that Bolden was unable to
> demonstrate that he had been prejudiced by any errors of
> appellate or trial counsel. The court declined to address
> Bolden's direct challenges to his guilty plea, finding they
> were not preserved for review.

*Bolden v. State*, No. 2-301/00-1252 (Iowa Ct. App. Jul. 3, 2002) (Doc. No. 19, item 3(H)) (hereafter "PCR App. Ruling").

Bolden timely commenced the instant action following the Iowa Court of Appeals's decision affirming the denial of post-conviction relief. In this action, Bolden asserts three claims for relief. He claims his appellate counsel was ineffective in two respects, and he asserts one claim that his trial counsel was ineffective. The court will discuss the claims in more detail below, first addressing the respondent's argument that Bolden's claim of ineffective assistance of trial counsel is procedurally defaulted.

## III. PROCEDURAL DEFAULT

In his third claim for relief, Bolden asserts: "Trial Counsel was ineffective in failing to depose and prepare critical witnesses and prepare a defense." Doc. No. 14, ¶ 10. Bolden did not raise this issue on direct appeal, but raised it for the first time in his PCR application. "Ineffective assistance of trial counsel must be raised in Iowa on direct appeal before postconviction relief is available, unless the defendant can show sufficient reason for the default." *Knox v. Iowa*, 131 F.3d 1278, 1281 n.2 (8th Cir. 1997) (citing *Jones v. State*, 479 N.W.2d 265, 271 (Iowa 1991); *Washington v. Scurr*, 304 N.W.2d 231, 235 (Iowa 1981)). As the Iowa Supreme Court has explained:

> [A] claim of ineffective assistance of trial counsel may be
> made in a postconviction proceeding, even if not made on
> direct appeal, if the applicant establishes by a preponderance
> of the evidence "sufficient reason" for not having raised the
> issue at trial and on direct appeal, and also establishes actual
> prejudice resulting from the alleged errors. *Polly v. State*,
> 355 N.W.2d 849, 855-56 (Iowa 1984). Ineffective assistance

> of appellate counsel may provide "sufficient reason" to permit
> the issue of ineffective assistance of trial counsel to be raised
> for the first time in a proceeding for postconviction relief.
> *Washington* [*v. Scurr*], 304 N.W.2d at 235.

*Jones v. State*, 479 N.W.2d 265, 271 (Iowa 1991). *See May v. Iowa*, 251 F.3d 713, 717 (8th Cir. 2001)

The Iowa Court of Appeals declined to address Bolden's claim that his trial counsel was ineffective "because Bolden failed to provide sufficient reason for failing to assert this claim on direct appeal." PCR App. Ruling at 8 (citing *Bugley v. State*, 596 N.W.2d 893, 897-98 (Iowa 1999)). The Iowa court noted Bolden had failed to contend his appellate counsel was ineffective in failing to raise this issue, and he stated no other basis for failing to raise the claim. Accordingly, the Iowa Court of Appeals affirmed the denial of PCR relief on this claim. *Id.*

In order for this court to consider Bolden's claim that his trial counsel was ineffective, Bolden would have to show cause for his State procedural default, and resulting prejudice. *Engle v. Isaac*, 456 U.S. 107, 129, 102 S. Ct. 1558, 1572, 71 L. Ed. 2d 783 (1982) ("[A]ny prisoner bringing a constitutional claim to the federal courthouse after a State procedural default must demonstrate cause and actual prejudice before obtaining relief."); *accord Maynard v. Lockhart*, 981 F.2d 981, 984 (8th Cir. 1992) ("A State procedural default bars federal habeas review unless the petitioner 'can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law.' *Coleman v. Thompson*, [501] U.S. [722, 750], 111 S. Ct. 2546, 2565, 115 L. Ed. 2d 640 (1991).") "In the absence of a finding of cause and prejudice, a federal court is precluded from reviewing procedurally defaulted claims on its own motion." *Maynard*, 981 F.2d at 985 (citing *Stewart v. Dugger*, 877 F.2d 851, 854-55 (11th Cir. 1989) (subsequent history omitted)).

In the present case, as in his PCR appeal, Bolden has failed to contend his appellate counsel was ineffective in failing to raise the issue of trial counsel's

ineffectiveness, and he has offered no other basis for his failure to raise the claim on direct appeal. The court finds Bolden has not met his burden to show cause and prejudice for failing to raise the issue of trial counsel's ineffectiveness on direct appeal. The issue is procedurally defaulted, and Bolden's petition should be denied as to this issue.

The respondent also argues Bolden's other two claims are procedurally defaulted. The court will address this issue in its discussion of Bolden's individual claims, below.

## IV. STANDARD OF REVIEW

### A. Habeas Petitions Generally

The court's review of Bolden's remaining claims is governed by the standards set forth by the United States Supreme Court in *Williams v. Taylor*, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000). The *Williams* analysis focuses on the requirements of the federal *habeas* statute, 28 U.S.C. § 2254, in light of amendments enacted as part of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). The amendments "placed a new restriction on the power of federal courts to grant writs of habeas corpus to State prisoners." *Williams*, 120 S. Ct. at 1516. For a State prisoner "to obtain federal habeas relief, he must first demonstrate that his case satisfies the condition set by § 2254(d)(1) . . . [which] modifies the role of federal habeas courts in reviewing petitions filed by State prisoners." *Williams*, 120 S. Ct. at 1518. Specifically, the AEDPA limited the source of legal doctrine upon which federal courts may rely in considering a State prisoner's *habeas* petition to "clearly established law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); *Williams*, 120 S. Ct. at 1506-07, 1516.

Prior to the AEDPA's enactment, federal courts could "rely on their own jurisprudence in addition to that of the Supreme Court." *Williams*, 120 S. Ct. at 1507. The Court explained that subsequent to the AEDPA:

> Section 2254(d)(1) defines two categories of cases in which a State prisoner may obtain federal habeas relief with respect

> to a claim adjudicated on the merits in State court. Under the statute, a federal court may grant a writ of habeas corpus if the relevant state-court decision was either (1) "contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States."

*Williams*, 529 U.S. at 404-05, 120 S. Ct. at 1519 (quoting 28 U.S.C. § 2254(d)(1)).

Under the first category, a state-court decision is "contrary to" Supreme Court precedent "if the State court applies a rule that contradicts the governing law set forth in [Supreme Court] cases." *Id.*, 529 U.S. at 405, 120 S. Ct. at 1519. The Court explained:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the State court arrives at a conclusion opposite to that reached by this Court on a question of law or if the State court decides a case differently than this Court has on a set of materially indistinguishable facts.

*Id.*, 529 U.S. at 412-13, 120 S. Ct. at 1523. Further, "the phrase 'clearly established Federal law, as determined by the Supreme Court of the United States' . . . refers to the holdings, as opposed to the dicta, of [the Court's] decisions as of the time of the relevant state-court decision." *Id.*, 529 U.S. at 412, 120 S. Ct. at 1523.

The second category, involving an "unreasonable application" of Supreme Court clearly-established precedent, can arise in one of two ways. As the Court explained:

> First, a state-court decision involves an unreasonable application of this Court's precedent if the State court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular State prisoner's case. Second, a state-court decision also involves an unreasonable application of this Court's precedent if the State court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or

> unreasonably refuses to extend that principle to a new context
> where it should apply.

*Id.*, 529 U.S. at 407, 120 S. Ct. at 1520 (citing *Green v. French*, 143 F.3d 865, 869-70 (4th Cir. 1998)). Thus, where a State court "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case," that decision "certainly would qualify as a decision 'involv[ing] an unreasonable application of . . . clearly established federal law.'" *Id*, 529 U.S. at 407-08, 120 S. Ct. at 1520. Notably,

> Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

*Id.*, 529 U.S. at 411, 1250 S. Ct. at 1522.

If the State court decision was not contrary to clearly established Federal law, as determined by the Supreme Court of the United States, and if it did not involve an unreasonable application of that law, then the federal court must determine whether the State court decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

## B. Ineffective Assistance of Counsel Claims

The standard for proving ineffective assistance of counsel was established by the Supreme Court in *Strickland v. Washington*:

> *First*, the defendant must show that counsel's performance was deficient. This requires a showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. *Second*, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said

that the conviction . . . resulted from a breakdown in the
adversary process that renders the result unreliable.

466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984) (emphasis added).
The reviewing court must determine "whether counsel's assistance was reasonable
considering all the circumstances." *Id.*, 466 U.S. at 688, 104 S. Ct. at 2065.

The defendant's burden is considerable, because "a court must indulge a strong
presumption that counsel's conduct falls within the wide range of reasonable professional
assistance; that is, the defendant must overcome the presumption that, under the
circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.*, 466
U.S. at 689, 104 S. Ct. at 2065 (citing *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S. Ct.
158, 164, 100 L. Ed. 83 (1955)). "Reasonable trial strategy does not constitute
ineffective assistance of counsel simply because it is not successful." *James v. Iowa*, 100
F.3d 586, 590 (8th Cir. 1996).

Furthermore, even if the defendant shows counsel's performance was deficient,
"[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside
the judgment of a criminal proceeding if the error had no effect on the judgment."
*Strickland*, 466 U.S. at 691, 104 S. Ct. at 2066. "Representation is an art, and an act
or omission that is unprofessional in one case may be sound or even brilliant in another."
*Id.*, 466 U.S. at 693, 104 S. Ct. at 2067.

Thus, the prejudice prong of *Strickland* requires a petitioner, even one who can
show that counsel's errors were unreasonable, to go further and show the errors "actually
had an adverse effect on the defense. It is not enough for the defendant to show that the
errors had some conceivable effect on the outcome of the proceeding. Virtually every act
or omission of counsel would meet that test." *Id.* *See Boysiewick v. Schriro*, 179 F.3d
616, 620 (8th Cir. 1999) (citing *Pryor v. Norris*, 103 F.3d 710, 713 (8th Cir. 1997)).
Rather, a petitioner must demonstrate "there is a reasonable probability that, but for
counsel's unprofessional errors, the result of the proceeding would have been different.

A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068.

A petitioner must satisfy both prongs of *Strickland* in order to prevail on an ineffective assistance of counsel claim. *See id.*, 466 U.S. at 687, 104 S. Ct. at 2064. It is not necessary to address the performance and prejudice prongs in any particular order, nor must both prongs be addressed if the district court determines the petitioner has failed to meet one prong. *Id.*, 466 U.S. at 697, 104 S. Ct. at 2069. Indeed, the *Strickland* Court noted that "if it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, that course should be followed." *Tokar v. Bowersox*, 198 F.3d 1039, 1046 (8th Cir. 1999) (citing *Strickland*).

In short, a conviction or sentence will not be set aside "solely because the outcome would have been different but for counsel's error, rather, the focus is on whether 'counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair.'" *Mansfield v. Dormire*, 202 F.3d 1018, 1022 (8th Cir. 2000) (quoting *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S. Ct. 838, 122 L. Ed. 2d 180 (1993)). In the final analysis, "an accused is only entitled to a fair trial, not a perfect one." *State v. King*, 256 N.W.2d 1, 12 (Iowa 1977) (citing *Schneble v. Florida*, 405 U.S. 427, 432, 92 S. Ct. 1056, 1060, 31 L. Ed. 2d 340 (1972); *State v. Kelsey*, 201 N.W.2d 921, 927 (Iowa 1972)).

## V. DISCUSSION

Bolden asserts his appellate counsel was ineffective in failing to challenge the validity of his guilty pleas on two bases: first, because the trial court failed to advise Bolden adequately of the dangers of representing himself, and second, because Bolden did not understand all of the collateral consequences of his guilty plea (specifically, that his interlocutory appeals would be dismissed after he entered his guilty plea). The court will address each of Bolden's claims in turn.

### A. Waiver of Right to Counsel

*1.* **Relevant facts**

Bolden claims his appellate counsel was ineffective in failing to challenge the validity of his guilty pleas because, according to Bolden, his decision to represent himself was not made knowingly, voluntarily, and intelligently. Preliminarily, the court notes the respondent argues this issue is procedurally defaulted because it was not raised on direct appeal. Bolden argues the ineffectiveness of his appellate counsel in failing to raise the issue on direct appeal constitutes cause sufficient to overcome the procedural default. In order to determine whether appellate counsel erred in failing to raise the issue on direct appeal, the court must consider whether the claim itself has merit. Accordingly, the court turns to consideration of the merits of Bolden's claim.

Because Bolden's claim is affected by the colloquy between Bolden and the trial court regarding his decision to represent himself, the court will quote relevant portions of the transcripts of the Iowa court proceedings. The first relevant hearing was held on August 8, 1996, before the Honorable Thomas L. Koehler, Iowa District Court in and for Linn County. Assistant Linn County Attorney Russell Keast was present on behalf of the State of Iowa. Bolden was present with Attorney Jonathan B. Hammond. The following proceedings took place:

> THE COURT: All right. This is the case of State of Iowa vs. Darrell Bolden. It's No. FECR 12186, FECR 10687, AGCR 12846 and SRCR 11754.
> Mr. Bolden appears with his Attorney, Jon Hammond. The State appears by Assistant County Attorney Russell Keast.
> Since there are requests filed on behalf of the Defendant pro se, do you wish to address the Court, Mr. Hammond, or do you wish the Court to address Mr. Bolden separately?
>
> MR. HAMMOND: I'd just like to give you a little background, Your Honor.

Mr. Bolden has filed a pro se motion indicating that he wants to proceed pro se and that's why I asked the Court to put it on the schedule for this morning. I became aware of it when I went down to the Clerk's Office to file some applications for orders to have him transported over for depositions.

Mr. Bolden has four pending offenses. He has filed pro se motions in the past to suppress evidence and for change of venue and those have already been heard.

There are two that have not been heard. And one that I became aware of yesterday is an Application for Evaluation for Substance Abuse Prior to Pretrial and Trial and then this Motion to Proceed Pro Se.

Mr. Bolden was previously represented by the Public Defender's Office, Mr. Logan, and he had filed an application to have new counsel appointed and that's how I came to be on the case.

I would like to give – I think Mr. Bolden should address the Court about what he wants to do. So, yes, I would like to give him that opportunity.

THE COURT: Mr. Bolden, anything you'd like to say on behalf of any of these matters?

THE DEFENDANT: Yeah. I filed this pro se motion because I feel that there's been some things that haven't been addressed. And if my counsel and the Courts have not acknowledged the things that I've filed motions on and information to the Court, then I feel I'm in a position where I can do that and do what is necessary.

So that's why I filed the motion to proceed pro se and I'm just requesting that – making the request that I be granted that so that I can address the issues that are important, you know, to me and to my – my particular set of circumstances.

I don't feel that I've been represented effectively and there is – my interests are different than the State's position and, obviously, my counsel's position or else I probably wouldn't have filed this.

I just feel that there needs to be a proceeding that's pro se if I'm going to be represented at all. You know. That's just the way I feel about it.

I've been in Linn County since June 11th, and I have employment, and my wife just gave birth to my daughter, so I have reasons to be, you know, with my family until I go to court.

You know, I haven't been convicted of anything yet and I've been having problems with this bond issue, and all this. I've had a bond revoked and property taken from the bond company where it's just been done illegally. And I want to – you know, I can address all of that stuff through motions if need be cause nobody else seems to find interest in it, so I will. I'm not going to just sit around and let stuff go on like it has been, so –

I feel I'm in a position now where I can do the things that haven't been done, and that's what I intend to do regardless of whether I have counsel representing me or not, you know. But I feel I can do it pro se and that's why I filed that motion.

So I'm, you know, just asking the Court to grant me that opportunity since I can't get the things, you know, addressed to the Court through counsel, I'll do it, you know, pro se, you know.

I don't have the material – the proper materials needed to do that, but I would like to, you know, be afforded that, you know, so that I can, you know, get a fair trial. If – if it comes to that.

THE COURT: So you're asking me to allow Mr. Hammond to withdraw from the case –

THE DEFENDANT: Yes.

THE COURT: -- and you're going to take over –

THE DEFENDANT: Exactly.

THE COURT: -- lock, stock and barrel?

THE DEFENDANT: Exactly.

THE COURT: Now, this is not going to be one of those situations where three weeks from now you change your mind and say – write me a letter and say, now, Judge, I think I need a lawyer? If I do this, this is it; right?

THE DEFENDANT: That's it.

THE COURT: You're going to pick, the jury, you're going to do all – everything a lawyer would do on your behalf?

THE DEFENDANT: I wouldn't have filed the motion.

MR. KEAST: Your Honor, it's the State's position that the Defendant needs an Attorney to be appointed to adequately prepare his defense and ensure a fair trial and we would resist the removal of Mr. Hammond in this case.

MR. HAMMOND: Your Honor, I – I think Mr. Bolden has every right to represent himself whether it's a good idea or not. I personally don't think it's in his best interests, but I know that's what he wants to do. I know that because he's filed motions to do things. He feels that – Well, he feels the way he feels and whether I agree with his judgment or not, I think he has a right to make that choice.

THE COURT: Last chance, Mr. Bolden. Do you want a lawyer or not?

THE DEFENDANT: I stand by my – the motion I filed or I wouldn't have filed it if I didn't feel comfortable with it.

THE COURT: I've heard rumors that there are inmates maybe, at least – maybe only one inmate over at the jail that's advising people to go this route.
Is that true or false?

THE DEFENDANT: Not if they're talking about me. I don't know.

THE COURT: I just thought maybe you were getting advice from another inmate or inmates.

THE DEFENDANT: No. I've just been having a lot of problems, obviously. I've stated right here in court the problems I've been having, and obviously nobody's paying any attention, so I am. It's my life, you know. I've got a family and, you know, like I said, I've got – I have things that if – if, you know, if I'm going to be – my future is at

stake here, you know, I'm looking at getting some things done. I'm not –

I don't want to go to prison, but that's what I'm facing right now and, you know, I'm going to do whatever I can to, you know, either prove my innocence if that's – you know, if that's what the trial process requires, that you prove you're innocent or you're innocent until you're proven guilty.

And that's the way, you know, I'm handling this – this matter. You know, I'm not just going to lay down if that's –

THE COURT: Well, what evidence do you have that the Court has not been addressing these issues?

I don't know what you're talking about. Just give me an example. You say the Court. Not your lawyer. You said at least twice now that the Court has not addressed your issues and I'm trying to determine what those issues are.

THE DEFENDANT: Well, medical. Medical issues. I've been waiting to get dental stuff taken care of while I've been in jail and that hadn't been addressed in my mind.

I've been trying to find out who, if – whatever bond or whatever. I've had bond posted, you know, two or three bonds. And, you know, I don't know who revoked these or pulled them or whatever, but it's causing me to have problems, you know, posting the bond.

You know, I've had my family down here from Waterloo to post the bond and stuff and they don't know what's going on because somebody's telling them one thing and then the bonds people tell them one thing or whatever.

You know, there's just numerous things. I don't really want to go into too much detail because of the confidentiality of it, you know. I don't know. There's some serious stuff and there should be a lot of it in my four files.

Every motion that's been filed so far, I've filed it myself. You know, my bond reduction, the motion to suppress the evidence, I filed all that stuff myself. Even though I don't have the proper resources to do it, I did it, you know, so that should – that should be enough right there. That should be enough as far as proof that, you know, there's a lot of stuff that ain't been addressed the way it should be, you know. Man, this –

THE COURT: Well, I don't want you to be under the impression that if you are allowed to represent yourself that we're going to provide you with books and –

THE DEFENDANT: No. I don't expect –

THE COURT: -- pencils and papers and that type of thing, because we don't do that.

THE DEFENDANT: I have – I've had enough things to file the motions that I have so far, so obviously, you know, it must be enough to get, you know, my access to the Courts. Actually, all I need is access to the Court.

THE COURT: Well, let me tell you this, Mr. Bolden. I've known Mr. Hammond for a long time, a lot longer than you have, --

THE DEFENDANT: Yes.

THE COURT: -- and he's an excellent criminal defense lawyer. I've had him in jury trial trials, I've seen him in action over the years, and I simply do not understand your allegations that he's not helping you, because I'm sure that – and I don't want to get into anything that's confidential, but I'm sure he's acting in your best interests and has in the past.

Now, you apparently disagree with me; is that right?

THE DEFENDANT: Yes, I do.

THE COURT: And you want to – you want to go it alone? Is that what you're telling me?

THE DEFENDANT: Yeah.

THE COURT: Well, you see, every time I ask you, you hesitate. So I want you to tell me yes or no.

THE DEFENDANT: Yes, your Honor.

THE COURT: Do you want to go it alone or not?

THE DEFENDANT: Yes, I do. I filed the motion and nobody's convincing me to do anything that I don't feel comfortable with doing and, you know, I'm not listening to nobody but Darrell here. This is me. This ain't nothing that

somebody has tried to convince me to do or whatever. Whatever rumor is going around, I don't know. And I don't care, really, because I'm not listening to nobody else except for what's in my own heart here.

This is something I've been thinking about and I've been looking over everything that I've been afforded the opportunity to see. Now, if there's something there that I haven't seen yet or whatever, but that's – that's – I mean –

THE COURT: Well, Mr. Keast, doesn't he have a right to represent himself?

MR. KEAST: I believe he does, your Honor.

THE COURT: All right. I'm going to grant your wish, Mr. Bolden.

THE DEFENDANT: Thank you.

THE COURT: Mr. Hammond is allowed to withdraw as Attorney in each of these cases, and you'll be representing yourself?

THE DEFENDANT: Yeah.

THE COURT: All right. Well, good luck to you.

THE DEFENDANT: Thank you.

MR. HAMMOND: Thank you, your Honor.

Doc. No. 19, item 3(D), Appendix in Iowa Sup. Ct. No. 00-1252, at pp. 55-65 (*State v. Bolden*, No. FECR 10687, *et al*, Hearing Tr. 08-08-96 (Linn County Dist. Ct.)). *See id.*, Appendix at 54, for Bolden's "Motion to proceed Pro Se."

On August 16, 1996, eight days after the trial court granted Bolden's motion to proceed *pro se*, Bolden appeared before the trial court to move for a continuance of his trial in Case No. FECR 10687, and to request "that advisory counsel be appointed to represent him." The trial court ordered: "Based upon the record made in open court, Attorney John J. Bishop is appointed as advisory counsel to represent the Defendant at public expense." The court continued the trial of the case to October 21, 1996. *State v.*

*Bolden*, Nos. FECR 10687 and FECR 12186, Order dated Aug. 16, 1996 (*see* Doc. No. 30, Item 1, Trial Court Papers).

On October 21, 1996, Bolden's case FECR 10687 came on for trial in Linn County, Iowa, before Judge Koehler. The court will quote the portions of the transcript that are relevant to consideration of Bolden's petition in this case. The following proceedings were had:

> THE COURT: All right. . . . This matter is set for jury trial to commence this morning.
>
> The Defendant appears with his Attorney, John Bishop. The State appears by County Attorney Denver Dillard.
>
> Mr. Bishop was appointed as advisory counsel previously in this matter and the Court has had Mr. Bolden in court, I believe, two weeks ago in Cause No. FECR 12186. At that time Mr. Bolden indicated to the Court that Mr. Bishop would be no longer advisory counsel but would be representing him fully.
>
> Mr. Bolden, is that your position with regard to this case, too? Is Mr. Bishop going to act as your Attorney here today?
>
> THE DEFENDANT: Well, I'd made a motion to the courts last week. I don't know if it was timely enough, but me and Mr. Bishop discussed that and I, you know, wish to remain as previously before, you know, as pro se and him as advisory counsel.
>
> THE COURT: All right. You're going to pick – Are you going to select the jury then or is Mr. Bishop?
>
> MR. BISHOP: Well –
>
> (At this time there was a short off-the-record discussion between the Defendant and Mr. Bishop.)
>
> MR. BISHOP: I think what Mr. Bolden would like to do is have me conduct the voir dire and then he can make his selections based on the answers and how it goes at that point.
> Is that your understanding, Mr. Bolden?
>
> THE COURT: Is that –

THE DEFENDANT:  Yes.

THE COURT:  Is that what you'd like to do, Mr. Bolden?

THE DEFENDANT:  Yes, sir.

THE COURT:  All right.  You'll have an opportunity to review the people that you'll strike, of course, but at this point, Mr. Bishop then will conduct the voir dire examination of the potential jurors.

Is that correct, Mr. Bolden?

THE DEFENDANT:  Yes.

THE COURT:  All right.  Anything else you want to take up before we bring the jury up?

MR. DILLARD:  Yes, your Honor.  Several things.

THE COURT:  All right.  Mr. Dillard?

MR. DILLARD:  The first thing I want to do for the record is to make it clear so that Mr. Bolden in his status as pro se counsel doesn't claim later that he didn't understand what the State has offered in this case.

I want to make that of record –

THE COURT:  Go ahead.

MR. DILLARD:  -- and so the Court is aware of it. I have offered Mr. Bolden the opportunity to plead to this charge as filed, to plead to the other charge that the Court recited on the record, without the habitual criminal provision, and that the State would recommend that those two sentences run concurrently.

Obviously, it would be the State's recommendation he be incarcerated.  Certainly he would get credit for time served.  But he would be facing a sentence of an indeterminate term not to exceed fifteen years.

In the event that this case is tried and a conviction results, the Defendant would then not have the option to plead to a charge in the other offense without habitual criminal, so he would either have to plead to it as filed or he would have to go to trial.

In the event that the State has convictions in both cases, it – without a plea in this case, the State will be recommending concurrent – or, consecutive. I want to make that clear. Consecutive sentences. So that the Defendant could be facing as much as 30 years in prison.

That's the first thing I wanted to do.

THE COURT: Do you understand that, Mr. Bolden? Well, let me ask it this way. Is there anything about it, what Mr. Dillard just said, that you do not understand?

THE DEFENDANT: Yeah. I mean, this 15-year sentence that, you know, I'm being offered is a mandatory sentence and, you know, I have offered to enter a plea on the charges, you know, by themselves without any enhancement penalty, which I haven't been explained as to why the enhancement penalty has been filed.

And if this is based on, you know, my past criminal record, then, you know, I feel that there is a, you know, abuse of discretion in this particular situation because the – the prior convictions that, you know, are on my record, I never went to trial on and there was a lot of – you know, I don't feel they were constitutionally obtained as for, you know, I basically, you know – you know, making a record of because I just don't understand the reason why this habitual is being included when, you know, it's a mandatory sentence.

And, you know, like I said, I've already, you know, made an attempt to, you know, enter a plea on the charges and, you know, I haven't been, you know, given a proper explanation as to why this habitual has been filed to begin with, other than, you know, there was some mention of a prior criminal record.

And, you know, that's – that was just something that I have doubts as to, you know, entering a plea on because of, you know, not, you know, being given an explanation as to why, you know, this is being filed.

THE COURT: Do you wish to respond, Mr. Dillard?

MR. DILLARD: Well, if Mr. Bolden wants an explanation, I'd be happy to make it of record.

The records supplied to us from Black Hawk County and confirmed by my conversations with attorneys in the two

cases, in the two separate incidents, indicate that in 1980 Mr. Bolden was convicted of Burglary in the Second Degree. And it appears that there was more than one conviction because there was also a conviction – This was in Case Number 19187. It also indicates that that was to be served concurrently with Number 18689.

In addition to that 1980 conviction for Burglary Second, in 1990, in Case No. D7X023129, Mr. Bolden, it appears, was convicted of three counts of Burglary in the Second Degree. And I also see that on the Black Hawk County sentencing order, part of that order indicates that this was a resolution of a case which was a – was just one D7X file when, in fact, there were six – there were four pending D7X files. And as I understand it, those are felonies.

So, first, Mr. Bolden's past record is substantial and they're all burglaries.

And the second factor is that Mr. Bolden was caught inside this residence. He was released by the Court on pretrial supervision. This, again, being a burglary.

Then he was arrested again in May for another Burglary, caught inside a garage. He is facing, as well, two Attempted Burglary charges.

In all of these cases, or at least three of the four cases, we have eyewitnesses to Mr. Bolden's entering the buildings.

And certainly this is subjective, but Detective Matias in this case has indicated to me repeatedly that Mr. Bolden became a focus of the police department's attention because of the number of burglaries he was committing, that they weren't able to catch him at the time, but they have a lot of information about hm.

So those are the reasons why the State is not relenting in this matter. Frankly, the first – on the first Burglary charge here, the one we're on today, I didn't originally know about Mr. Bolden's record and that's why it was originally filed as only a Burglary in the Third Degree.

He has made his own mess, to put it in one way, by acting in this manner. So that's the State's reason for doing what it's doing and, frankly, the offer, a lot of people I think in the public would say is generous.

THE COURT: Any other questions, Mr. Bolden?

> I don't want to leave the jury panel down there much
> longer.

Trial Tr. at 2-8 (Appeal App. at 70-76).

Thereafter, Bolden and his wife raised further objections to the inclusion within the Trial Information of enhancements based on his previous record, particularly in light of the fact that Bolden apparently had discharged his sentences on the previous charges. Both the court and the County Attorney attempted to explain the matter to Bolden, but they were unsuccessful in convincing him that he had been charged properly.

In addition, Bolden raised an objection to the authenticity of the Trial Information because his copy was not signed. The trial judge showed Bolden the signed original of the document in the court file, and the County Attorney explained how Trial Informations are filed by his office. *Id.* at 16-19 (Appeal App. at 84-87). The trial court held the Trial Information and the Amended and Substituted Trial Information were authentic. *Id.* at 12, 19 (Appeal App. at 80, 87).

Mr. Bishop, on Bolden's behalf, moved to exclude from the trial in chief any evidence regarding Bolden's prior criminal history, except in the event Bolden elected to testify, in which case it could be used for impeachment purposes. The motion was unopposed by the State, and the trial court granted the motion. *See id.* at 14-16 (Appeal App. at 82-84).

Then the following proceedings were had:

> THE COURT: . . . Are you prepared now to proceed to select the jury, Mr. Bishop?
>
> MR. BISHOP: Your Honor, could I just have two minutes with my client just to make sure that he's aware and is ready to proceed?
>
> THE COURT: All right. It's approximately 22 minutes to 10:00. I'll – Let's take about five minutes and then I'm going to call the jury.
>
> MR. BISHOP: Okay.

[Recess from 9:38 a.m. to 9:53 a.m.]

THE COURT:  All right.  This is Cause Number FECR 12186 and FECR 10687.  Both cases are entitled the State of Iowa vs. Darrell Ricardo Bolden, Defendant.

Mr. Bolden appears personally and with his counsel, John Bishop, in FECR 12186.  In FECR 10687 Mr. Bolden is representing himself and has Mr. Bishop as advisory counsel.

Mr. Bolden, it's my understanding that you wish to withdraw your previous pleas of not guilty in each of these cases and enter pleas of guilty to the offenses charged.

Is that what you'd like to do, sir?

THE DEFENDANT:  Yes.

THE COURT:  Now, with regard to FECR 12186, it's my understanding that the State of Iowa wishes to withdraw its allegation of Habitual Criminal; is that correct, Mr. Dillard?

MR. DILLARD:  Yes.  In that charge, that is correct.

THE COURT:  Do you have any questions at all about the nature of either of these offenses, Mr. Bolden?

I'll go through them with you.

In FECR 12186, it's alleged that you committed the offense of Burglary in the Third Degree and alleges more specifically that you did, on or about the 1st day of May, 1996, in Linn County, Iowa, unlawfully and willfully enter the garage of Joe Schumacher, 2230 C Street SW, Cedar Rapids, Iowa, with the intent to commit a theft.

Do you have any questions at all about the nature of that offense?

THE DEFENDANT:  No.

THE COURT:  In Cause No. FECR 10687, it's alleged that you did commit the crime of Burglary in the Third Degree and that you were a Habitual Criminal, more specifically stating that on or about the 24th day of January, 1996, in Linn County, Iowa, you did unlawfully and willfully break and enter the residence of Doug Phillips at 530 Forest Drive SE, Cedar Rapids, Linn County, Iowa, with the intent

to commit a theft and having twice previously been convicted of a felony.

Do you have any questions at all about the nature of that offense?

THE DEFENDANT: No.

THE COURT: Do you understand that Burglary in the Third Degree is a Class D felony? It carries a maximum sentence of up to five years in prison and a fine of up to $7,500.00, or both the imprisonment and the fine as the maximum sentence.

Do you understand the range of punishment for Burglary in the Third Degree?

THE DEFENDANT: Yes.

THE COURT: Do you understand that Burglary in the Third Degree and Being a Habitual Criminal carries a maximum sentence of up to five years in prison and a fine of up to $7,500.00?

There is also the enhancement provision, of course, which carries a maximum sentence of an additional 10 years for a maximum sentence of 15 years, up to 15 years for that particular offense.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Do you understand the range of punishment then for both of these offenses?

THE DEFENDANT: Yes.

THE COURT: There is also a mandatory minimum sentence of three years for the Burglary in the Third Degree and Being a Habitual Criminal.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Do you further understand that by pleading guilty here today you waive and give up your right to a trial in each of these case?

THE DEFENDANT: Yes.

THE COURT:  In other words, you're telling me you are guilty of each of these offenses and you do not want a trial.

And that is correct; is it not?

THE DEFENDANT:  Yes.

THE COURT:  Now, if you did continue with your pleas of not guilty and did require the State to go forward with the trials, the State would have to prove each and every element of these offenses beyond a reasonable doubt to a jury of twelve people.

You would have the assistance of counsel at all stages of the proceedings.  If you were indigent and could not afford an Attorney, one would be appointed to represent you at public expense.

You would have the right to confront and cross-examine all the witnesses that the State would present at the trial.

You could not be compelled to incriminate yourself and would not have to testify.  If you did not testify, the jury would be instructed that no inference could be drawn from the fact that you did not take the stand and testify in your own behalf.

You could call witnesses at those trials and have available to you the compulsory processes of the Court whereby witnesses could be subpoenaed to be compelled to appear at the trial to testify to any defense or defenses which you may have to the charges.

And it would take a unanimous verdict of twelve jurors to convict you of it.

Do you understand that you have these rights and that you waive and give up these rights by pleading guilty?

THE DEFENDANT:  Yes.

THE COURT:  Has anybody made any threats, promises, or intimidated you in any way to get you to plead guilty?

THE DEFENDANT:  No.

THE COURT: Have you had sufficient time to discuss this case fully with your advisory Attorney in the one case, Mr. Bishop?

THE DEFENDANT: Yes.

THE COURT: Are you satisfied with the advice and services of Mr. Bishop?

THE DEFENDANT: Yeah.

THE COURT: Do you understand as a part of the process –

Well, let me ask you, Mr. Bishop. Are you satisfied that the Defendant understands exactly what he's doing?

MR. BISHOP: I am, your Honor.

THE COURT: All right. Do you understand, as a part of the process, Mr. Bolden, that you would be required to pay restitution in these cases? If there's anything, any victim restitution in these cases, you would be required to pay it?

THE DEFENDANT: Yeah.

THE COURT: Do you understand that the restitution might include the expense of your Court-appointed counsel?

THE DEFENDANT: Yeah.

THE COURT: Do you understand that the restitution might include court costs?

THE DEFENDANT: Yeah.

THE COURT: Is there a plea agreement in this case, Mr. Dillard?

MR. DILLARD: Yes, your Honor.

THE COURT: I should say cases. I'm sorry. Go ahead.

MR. DILLARD: Thank you. The State has agreed to drop the Habitual Criminal allegation in FECR 12186. That the Defendant, by entering pleas of guilty to the two files, would then have the State's recommendation that the

sentences run concurrently rather than consecutively so that he would have concurrent sentences of 15 years and 5 years that would run together.

In addition to that, the State has agreed that the Defendant may at the time of sentencing argue for probation, although the State will be recommending that Mr. Bolden be imprisoned.

In addition to that, the State has agreed to dismiss or move to dismiss other pending charges against Mr. Bolden. I don't have the case numbers in front of me, but it's my understanding that there are two Attempted Burglaries in the Third Degree, as well as an Interference With Official Acts. The State would move to dismiss those cases.

I've also agreed, so that Mr. Bolden knows that the State's offer is in good faith, that I will not be writing any letter to the Parole Board as is sometimes the case and sometimes done by prosecutors. I won't be writing any letter to the Parole Board that would have the effect of undercutting the plea agreement.

THE COURT: Mr. Bolden, is that your understanding of the plea agreement?

THE DEFENDANT: Yes. As long as there's no other charges that are pending that I don't – I'm not aware of that, you know, may be, you know, on file or whatever that somebody may have overlooked. Because as far as I know, there was three Attempted Burglaries or something, or something in that nature.

MR. DILLARD: Well, let me State for the record, I don't know if Mr. Bolden's correct about that or not because I don't have all of the case numbers in front of me. If there is something else on file, we'll dismiss that as well.

I know that other charges have been presented by the police department to me and that have not been filed that have been sent back, and I assure Mr. Bolden that there won't be any other charges filed against him, at least that – that has been presented or that I'm aware of.

But as far as Burglaries are concerned, Mr. Bolden would be free and clear, we wouldn't be filing any more charges.

THE COURT: Do you understand that, Mr. Bolden?

THE DEFENDANT: Yes.

THE COURT: Mr. Bishop, I know you're advisory counsel in the one case and counsel of record in the other. Is that your understanding of the plea agreement?

MR. BISHOP: Yes, it is. I do have the case numbers here in front of me, too. I'll State them for the record. I guess I'm not sure if the Attempted Burglaries are together. I've only got one number for that. It's AGCR 12846 and the Interference is SRCR 11754. But that is my understanding of the plea agreement as well.

THE COURT: All right. Mr. Bolden, has anybody made any threats, promises, or intimidated you in any way to get you to enter these guilty pleas?

THE DEFENDANT: No.

THE COURT: All right. To be guilty of the offense charged in FECR 12186, the State of Iowa would have to prove that on or about the 1st day of May, 1996, you did break into a specific place, that being the garage of Joe Schumacher at 2230 C Street SW; that the garage was an occupied structure; that you did not have permission or authority to enter the garage at that time; that you did so with the intent to commit a theft.

Theft is knowingly taking possession or control of specific property with the intent to deprive the victim of the property when the property was in the possession of or belonged to the victim.

Do you understand the elements of that offense?

THE DEFENDANT: Yeah.

THE COURT: Did you, on or about the 1st day of May, 1996, in Linn County, Iowa, break into a garage at 2230 C Street SW, Cedar Rapids, Iowa?

THE DEFENDANT: Yes.

THE COURT: Do you agree that that was an occupied structure?

THE DEFENDANT: Yes.

THE COURT: Do you agree that you did not have permission or authority to enter the garage at that time?

THE DEFENDANT: Yeah.

THE COURT: Do you agree that you did so with the intent to commit a theft?

THE DEFENDANT: Yeah.

THE COURT: With regard to Cause No. FECR 10687, the State of Iowa would have to prove that on or about the 24th day of January, 1996, in Linn County, Iowa, you did break and enter the residence of Doug Phillips at 530 Forest Drive SE, Cedar Rapids, Linn County, Iowa; that that was an occupied structure; that you did not have permission or authority to enter the residence at that time; that you did so with the intent to commit a theft.

Theft, as I indicated, is knowingly taking possession or control of specific property with the intent to deprive the victim of the property when the property was in the possession of or belonged to the victim.

And that you had twice – twice previously been convicted of a felony.

Do you understand the elements of that offense?

THE DEFENDANT: Yes.

THE COURT: Did you, on or about the 24th day of January, 1996, in Linn County, Iowa, break and enter the residence of Doug Phillips at 530 Forest Drive SE, Cedar Rapids, Iowa?

THE DEFENDANT: Yes.

THE COURT: I didn't hear you.

THE DEFENDANT: Yes.

THE COURT: Do you agree that that was an occupied structure?

THE DEFENDANT: Yes.

THE COURT:  Do you agree that you did not have authority or permission to enter the residence at that time?

THE DEFENDANT:  Yes.

THE COURT:  Do you agree that you entered the residence with the intent to commit a theft?

THE DEFENDANT:  Yes.

THE COURT:  Do you agree that you had twice previously been convicted of a felony?

THE DEFENDANT:  Yes.

THE COURT:  All right.  Have you had occasion to read the Minutes of Testimony in each of these cases?  What the State believes the witnesses would say if they were brought in here for trial?

THE DEFENDANT:  Yes.

THE COURT:  And with regard to both of these files, are those Minutes of Testimony substantially correct?

THE DEFENDANT:  Yeah.

THE COURT:  Do you know of any reason why he should not plead guilty to either of these charges, Mr. Bishop?

MR. BISHOP:  No, I do not, your Honor.

THE COURT:  Are you satisfied there is factual basis for each of these pleas?

MR. BISHOP:  Yes, your Honor.

THE COURT:  Do you know of anything else we should cover with regard to the pleas which we have not covered?

MR. BISHOP:  No, I don't.

THE COURT:  Do you know of anything, Mr. Dillard?

MR. DILLARD:  No, your Honor.

THE COURT: I find there is a factual basis for each of the pleas, that they're voluntarily and intelligently made and, therefore, accept same.

We'll order a presentence investigation and we'll set the sentencing for December 13, 1996, at 9:30 a.m.

Now, Mr. Bolden, if you intend to contest or challenge these proceedings, you would have to do so by what we call a motion in arrest of judgment. A motion in arrest of judgment must be filed within 45 days of this date and no less than five days prior to sentencing. Therefore, you would have to comply with those time limitations to be successful with reference to such a motion.

Do you understand that, Mr. Bolden?

THE DEFENDANT: Yes.

THE COURT: All right. We'll see you back here then on December 13th, 1996.

. . . [Brief discussion about setting an earlier plea date.]

THE COURT: November 8th, 1996, at 9:30 a.m. All right. Thank you.

Trial Tr. at 19-33 (Appeal App. at 87-101).

John Bishop testified at the trial on Bolden's PCR application, and described his role in Bolden's two Linn County cases. To his recollection, Bishop served as "stand-by or advisory counsel" to Bolden. PCR trial Tr. at 5 (Appeal App. at 314). He stated he and Bolden had an understanding that if Bolden's cases proceeded to trial, Bishop would conduct voir dire, make an opening statement, cross-examine witnesses, and make a closing argument, and Bolden "would still be free as a pro se litigant to continue to file motions and so forth." *Id.*

Bishop indicated he filed motions on Bolden's behalf, and he also took depositions in both of Bolden's cases in which Bishop questioned the deponents. He noted at least one of the witnesses could not be located and was not deposed. Bishop agreed it was his responsibility to take care of preparing subpoenas and having witnesses served in Bolden's two cases. *Id.* at 5-8 (Appeal App. at 314-17) Bolden testified he attended the

depositions, and it was never explained to him why some of the witnesses were not deposed. *Id.* at 30-31 (Appeal App. at 338-39).

Bishop stated the morning before the trial, he visited with Bolden at the jail for the purpose of going over last minute details and making sure Bolden had gotten clothing to wear to the trial. Bolden indicated he did not want to get dressed and go to trial, but according to Bishop, Bolden did not give any reason and Bishop felt "it was a gut feeling on Mr. Bolden's part." *Id.* at 10 (Appeal App. at 319) Bolden testified he did not feel the case had been prepared properly for trial and he wanted a continuance. He stated he did not file a *pro se* motion to continue because he had gotten "really stressed and confused" about "the deposition issue," and also about a request he had made for a second drug evaluation regarding his competency. *See id.* at 44-45 (Appeal App. at 352-53). Bolden stated the fact that he felt unprepared to go to trial influenced his decision to plead guilty. *Id.* at 45 (Appeal App. at 353)

At the PCR trial, Bolden described his extensive drug use and stated he believed his drug use had affected his judgment and his ability to make competent decisions at the time he entered his guilty pleas. Bolden stated that after unsatisfactory relationships with two attorneys, he looked through the phone book and called Bishop to ask if Bishop might be willing to assist him. According to Bolden, Bishop agreed to represent him if the court would appoint him as Bolden's Attorney. Bolden stated he was leaning toward representing himself *pro se*, but having Bishop "assist in some of the duties that [he] wouldn't be able to perform due to [his] incarceration." *Id.* at 23-24 (Appeal App. at 332-33). Bolden stated that at the time, he was "really confused because of the extensive drug use," and he felt he could not represent himself effectively. *Id.* at 24 (Appeal App. at 333). He stated that after he entered his guilty pleas, he filed a motion in arrest of judgment because someone told him the judge would not be bound by the plea agreement recommendation that he receive concurrent sentences, and also because he had not

received a second evaluation he had requested of his chemical dependency and its effect on his competency.  *Id.* at 47 (Appeal App. at 356)

In his PCR application, Bolden argued his appellate counsel was ineffective in failing to raise, on appeal, the issue that Bolden's guilty pleas were invalid because Bolden was not advised properly about the dangers of representing himself.  A trial was held on Bolden's PCR application, followed by the subsequent submission of additional evidence and a supplemental hearing.  After considering the evidence, the PCR trial court held as follows on this claim:

> The Court finds that the issue that must be dealt with most seriously is that involving whether Bolden made a knowing, voluntary, intelligent waiver of his right to counsel before representing himself pro se with standby counsel. . . .
>
> .  .  .
>
> [T]he record shows that Bolden was represented by lead counsel when he pled guilty to the burglary charge in FECR 12186 and standby counsel when he pled guilty to Burglary in the Third Degree as an habitual offender in FECR 10687.  He alleges that there is no record that he validly waived his right to counsel when he wanted to represent himself and that, though that error might have been obviated by Mr. Bishop taking over as lead counsel in one case, it did not on the other even though Mr. Bishop was acting as stand-by counsel. . . .
>
> .  .  .
>
> It is clear from appellate counsel's testimony that he gave only brief, if any, consideration to the issue of whether Bolden made a constitutionally valid waiver of his right to counsel despite having a transcript of the hearing where Attorney Hammond was allowed to withdraw and Bolden was allowed to proceed pro se.  Attorney Hubbard stated that the issue of waiver of counsel was "not a problem" because Bolden never complained about representing himself.  Further, Hubbard believed that the trial court had adequately explained to Bolden the risks of self-representation.  Finally,

in retrospect, Hubbard opined that John Bishop, as standby counsel, had assumed the responsibility of full representation of Bolden by his active participation in the anticipated trial and then the plea agreement. Thus, in reality, Bolden was not deprived of counsel.

Despite the recent flurry of litigation surrounding the issue of pro se representation and the Iowa appellate courts' desire to bring some structure to the process of securing a valid waiver of the right to counsel, a trial court's duty to make a "more searching or formal inquiry before permitting an accused to waive his right to counsel at trial" is well-settled. Patterson v. Illinois, 487 U.S. 285, 299, 108 S. Ct. 2389, 101 L. Ed. 2d 276, 288 (1988); Abdullah v. Groose, 44 F.3d 692, 694 (8th Cir. 1995). Despite counsel's focus on State v. Cooley, 608 N.W.2d 9, 17 (Iowa 2000), the importance of this issue is not of such recent vintage that an Attorney would have to be a "crystal gazer" to realize its significance. See Burgess v. State, 585 N.W.2d 846, 848 (Iowa app. 1998). Thus, reasonably competent counsel could not claim to be unaware of the existence of the issue. Further, unlike other issues, counsel's failure to raise the issue should not be excused by Bolden's failure to mention it among his other voluminous and mostly meritless complaints about how his case proceeded. It is precisely a Defendant's ignorance of the importance of the right to counsel and the importance of a knowing, voluntary and intelligent waiver of that right that result in that right being so vigilantly protected. See State v. Cooley, supra. Given those considerations, this Court concludes that an Attorney who represents a criminal appellant, who acted pro se in the trial court, and fails to evaluate whether the trial court received a constitutionally acceptable waiver of the right to counsel, violates a fundamental duty.

The transcript of the hearing where the trial court allowed Mr. Bolden to proceed pro se shows that the court failed to comply with the requirements for a valid waiver of counsel. See State v. Hindman, 441 N.W.2d 770, 773 (Iowa 1989). There is no discussion of the seriousness of the charges, Mr. Bolden's familiarity with the law or an admonition against self-representation. Hubbard's assessment

of its validity is not within the range of constitutional competence. However, Mr. Bishop's presence as full counsel in FECR 12186 cured any initial defect from the original failure to obtain a valid waiver of counsel in that case. The issue then becomes whether because Mr. Bishop was also available to advise Bolden with regard to his plea bargain and had planned on conducting, at least, voir dire at trial, that he was the equivalent of full counsel in FECR 10687 and, thus, Bolden was not deprived of the right to counsel.

Initially, it is clear that appointment of standby counsel does not cure any defect in a court's failure to obtain a valid waiver of counsel. State v. Rater, 568 N.W.2d 655, 661 (Iowa 9197). However, a criminal defendant who has waived the right to counsel may subsequently waive the right to self-representation. State v. Spencer, 519 N.W.2d 357, 359 (Iowa 1994). A court looks at the record as a whole to determine whether a defendant desires to be represented by counsel. Id., at p. 60. Here, it is significant that Bolden continued to indicate to the trial court his desire to represent himself in FECR 10687 with Bishop as standby counsel. Judge Koehler tried to respect that distinction during the proceedings before him. However, this Court concludes that Bolden waived his right to self-representation by allowing Bishop to conduct the planned voir dire at trial and by accepting his active participation in the negotiations that resulted in the plea agreement. See United States v. Swinney, 970 F.2d 494, 498 (8th Cir. 1992). Bishop had become, in effect, "hybrid counsel," with Bolden only reserving the privilege of filing motions. See United States v. Einfeldt, 138 N.W.2d 373, 378 (8th Cir. 1998). This is an arrangement that a court need not accept. Id. This court concludes that because[] Bolden waived his right to self-representation by accepting Bishop's participation as the equivalent of lead counsel, there was no deprivation of the right to counsel. Thus, appellate counsel did not violate a fundamental duty to Bolden's prejudice even though the better practice would have been, at least, to call the appellate court's attention to the issue in his motion to withdraw.

In sum, the Court finds that the Applicant has not established that he was deprived of the effective assistance of

appellate counsel who failed to raise the alleged unconstitu-
tional deprivation of Bolden's right to counsel.

*Bolden v. State*, No. LACV 031008, Order on PCR app. at 2, 5, 8-11 (Linn County, Iowa, Dist. Ct. June 21, 2000).

Bolden appealed the denial of post-conviction relief, and the Iowa Court of Appeals held as follows on this claim:

> Bolden argues that his guilty plea was invalid because he was not adequately informed of the dangers of self-repre-sentation at trial before the court accepted his guilty plea. *See Faretta v. California*, 422 U.S. 806, 835, 95 S. Ct. 2525, 2541, 45 L. Ed. 2d 562, 581-82 (1975); *State v. Rater*, 568 N.W.2d 655, 658 (Iowa 1997); *see also State v. Stephenson*, 608 N.W.2d 278, 282-83 (Iowa 2000) (The trial court's failure to engage the defendant in a *Faretta*-colloquy prior to trial necessitates reversal and a remand for a new trial.). The abrogation of this duty is presumptively prejudicial and will not be considered harmless error. *State v. Cooley*, 608 N.W.2d 9, 17-18 (Iowa 2000). The gist of Bolden's argument is that the duty imposed in *Faretta* extends to plea proceedings as well as trial, and that the foregoing colloquy was insufficient by *Faretta* standards. We disagree.

> Contrary to Bolden's claims, we find nothing in *Faretta*, *Cooley*, or *Stephenson* requiring a *Faretta*-like inquiry before a defendant is allowed the right of self-representation in plea proceedings. The flaw in Bolden's argument is its failure to accommodate the distinction our supreme court has noted between a trial and other proceedings that do not implicate the "full dangers and disadvantages of self-representation" at trial. *See Cooley*, 608 N.W.2d at 15 (quoting *Patterson v. Illinois*, 487 U.S. 285, 299, 1085 S. Ct. 2389, 2398, 101 L. Ed. 2d 261, 276-77 (1988)). The State correctly argues that the purpose of the colloquy conducted at a plea proceeding is to insure that the decision to plead guilty is knowing, intelligent, and voluntary and is not meant to inform the defendant of the pitfalls of self-representation attending the trial process. *See Stano v. Dugger*, 921 F.2d 1125, 1149 (11th Cir. 1991); *Lewellyn v. Wainwright*, 593 F.2d 15, 16 (5th Cir. 1979); *State v. Cashman*, 491 N.W.2d

> 462, 463 (S.D. 1992) (duties imposed by *Faretta* do not
> extend to guilty plea proceedings). Because the validity of
> Bolden's guilty plea was accordingly not subject to a
> meritorious challenge based on the trial court's failure to
> conduct an appropriate *Faretta* inquiry, appellate counsel did
> not breach an essential duty by failing to raise this issue on
> direct appeal. *State v. Hoskins*, 586 N.W.2d 707, 709 (Iowa
> 1998) (counsel has no duty to pursue a meritless issue). We
> affirm on this issue.

PCR App. Ruling at 5-7.

Bolden reasserts his argument here, continuing to maintain that he did not make a knowing, voluntary, and intelligent waiver of his right to counsel, and his appellate counsel was ineffective in failing to raise the issue on appeal. *See* Doc. No. 27 at 7-14. The respondent counters that, as held by the PCR trial court, Bolden actually *was not* deprived of representation by counsel during his plea proceedings. Alternatively, the respondent argues if Bolden is deemed to have represented himself, then he made a knowing, voluntary, and intelligent waiver of counsel, and his constitutional rights were not violated. *See* Doc. No. 32-1 at 10-45.

## 2. *Analysis*

Both parties cite to the recent Supreme Court decision in *Iowa v. Tovar*, 541 U.S. 77, 124 S. Ct. 1379, 158 L. Ed. 2d 209 (2004). Bolden argues *Tovar* supports his position, while the respondent argues Bolden's reliance on *Tovar* is misplaced. *See* Doc. Nos. 56 & 59, respectively. The case of *Faretta v. California*, 422 U.S. 806, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975), cited by the Iowa Court of Appeals, and its progeny, including *Tovar*, are dispositive of Bolden's claim here. The Eighth Circuit Court of Appeals recently had the opportunity to discuss the holdings of *Faretta* and *Tovar* in a case remarkably similar to Bolden's.

In *Page v. Burger*, ___ F.3d ___, 2005 WL 100500 at *3 (8th Cir. May 2, 2005), a case arising in the Southern District of Iowa, the defendant argued "he was denied his

Sixth Amendment right to counsel by the Iowa State court when the court granted his request to represent himself without a sufficient warning of the ramifications of his choice." *Page* at *1. The Iowa court appointed standby counsel to assist Page in representing himself. Page and his standby counsel each filed pretrial motions, and at the hearings on the motions, the trial court heard arguments from both Page and his standby attorney. The standby attorney conducted most of the trial, but Page asked some follow-up questions of witnesses after the attorney finished his questioning. The standby attorney made objections, moved for a mistrial, argued for a motion of acquittal, filed a motion for new trial after Page was convicted, and made arguments at sentencing. *See id.* at *2.

On appeal, the Iowa Court of Appeals held Page had, in fact, been represented by counsel, and Page had "merely served as 'co-counsel' to the active representation by [the standby attorney]." *Id.* at *3. Page filed a federal habeas action, in which the Southern District of Iowa agreed Page had been represented adequately by counsel during his trial. However, the court "addressed the pre-trial proceedings as if Page only had standby counsel, [and] [t]o that extent, the district court concluded that Page sufficiently understood the nature of his right to representation, and, thus, voluntarily waived his right to pretrial counsel." The district court issued a certificate of appealability.

The Eighth Circuit's analysis of Page's claim is directly on point in the present case. The court held as follows, in pertinent part:

> Page's argument focuses on two United States Supreme Court cases, *Faretta v. California*, 422 U.S. 806[, 95 S. Ct. 2525, 45 L. Ed. 2d 562] (1975), and *Iowa v. Tovar*, 541 U.S. 77[, 124 S. Ct. 1379, 158 L. Ed. 2d 209] (2004). In *Farretta*, the Court held that a criminal defendant's Sixth Amendment right to the assistance of counsel includes the related right to waive counsel and conduct his own defense. *Faretta*, 422 U.S. at 807[, 95 S. Ct. at 2527]. Nonetheless, before permitting a defendant to exercise his or her constitutional right to proceed *pro se*, the court must be satisfied that the waiver of appointed counsel is knowing and

voluntary.  *See Godinez v. Moran*, 509 U.S. 389, 400[, 113 S. Ct. 2680, 2687, 125 L. Ed. 2d 321] (1993).  More particularly, "any waiver of the right to counsel must be knowing, voluntary, and intelligent."  *Tovar*, 541 U.S. at 88[, 124 S. Ct. at 1387].

When a trial court allows a criminal defendant to proceed *pro se* without adequate warnings of the potential consequences, the purported waiver of the right to counsel is invalid.  A waiver is valid only if the defendant is "made aware of the dangers and disadvantages of self-representation" at the time of the waiver, "so that the record will establish that he knows what he is doing and his choice is made with his eyes open."  *Faretta v. California*, 422 U.S. at 835[, 95 S. Ct. at 2541] (internal citation omitted).  During the pretrial stages of the criminal process, less vigorous warnings are typically adequate because "the full dangers and disadvantages of self-representation . . . are less substantial and more obvious to an accused than they are at trial."  *Tovar*, 541 U.S. at 90[, 124 S. Ct. at 1388] (citations omitted).  Throughout the waiver inquiry, "[c]ourts must consider the particular facts and circumstances surrounding each case, including the background, experience, and conduct of the accused."  *Moore v. United States*, 178 F.3d 994, 998 (8th Cir. 1999).  The Supreme Court has explained that Miranda warnings are sufficient to explain the dangers of self-representation to a defendant during post-indictment questioning.  *Patterson v. Illinois*, 487 U.S. 285, 300[, 108 S. Ct. 2389, 2398-99, 101 L. Ed. 2d 261] (1988).  With regard to a guilty plea, "[t]he constitutional requirement is satisfied when the trial court informs the accused of the nature of the charges against him, of his right to be counseled regarding his plea, and of the range of allowable punishments attendant upon the entry of a guilty plea."  *Tovar*, 541 U.S. at 81[, 124 S. Ct. at 1383].

Page's case differs significantly from *Tovar*, which applies where the defendant actually served as his own counsel.  As indicated above, the Iowa Court of Appeals concluded that Page was adequately represented by counsel throughout the proceedings because [the standby Attorney]

actually performed as counsel throughout the proceeding. As such, Page's argument is unpersuasive. [Footnote omitted.]

We now address whether the Iowa Court of Appeals decision "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). "A defendant's Sixth Amendment rights are not violated when a trial judge appoints standby counsel." *McKaskle v. Wiggins*, 465 U.S. 168, 184[, 104 S. Ct. 944, 954, 79 L. Ed. 2d 122] (1984). Accordingly, the Iowa State trial court did not infringe Page's Sixth Amendment rights by appointing standby counsel for hm. "Once a pro se defendant invites or agrees to any substantial participation by counsel, subsequent appearances by counsel must be presumed to be with the defendant's acquiescence, at least until the defendant expressly and unambiguously renews his request that standby counsel be silenced." *Id.* at 183[, 104 S. Ct. at 953]. The Supreme Court has expressly held that "*Faretta* does not require a trial judge to permit 'hybrid' representation." *Id.*

Here, Page vacillated on self-representation, allowing [the standby Attorney] to act as counsel but still attempting to maintain his status as *pro se.* Page acquiesced to [the standby attorney's] substantial pretrial work, including arguing motions and jury selection. In addition, Page wrote a note to [the standby Attorney] requesting that [the attorney] take over the entire trial. Upon [the attorney's] appointment as "standby counsel," Page's commitment to complete self-representation essentially vanished. We have recognized that a trial court may approve hybrid representation – where a defendant essentially acts as co-counsel – but, it is at the trial court's discretion. *United States v. Einfeldt*, 138 F.3d 373, 378 (8th Cir. 1998). The Iowa appellate court held that Page was properly represented by counsel "throughout the course of the proceedings," albeit in a hybrid fashion that permitted Page to inject himself into the questioning.

We share the district court's concern with the particular facts of this case. The State trial judge, rather than warning Page of the dangers of self-representation, in essence, goaded

him into representing himself, and then appointed standby counsel. If the facts had ended there this would be a different case entirely. However, the Iowa Court of Appeals decisions that Page vacillated on invoking his *Faretta* rights and that he was effectively represented by [the standby Attorney] from the time he was appointed standby counsel is not contrary to, or an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States. 28 U.S.C. § 2254(d)(1); *Bell v. Cone*, 125 S. Ct. 847, 851 (2005).

> For the foregoing reasons, we affirm the district court's decision to dismiss Page's petition for writ of habeas corpus.

*Page*, 2005 WL 100500 at *3-5.

In Bolden's case, the Iowa Court of Appeals similarly noted the difference between a trial and a plea proceeding in terms of the trial court's duty to advise a criminal defendant. The Iowa court noted "the purpose of the plea colloquy conducted at a plea proceeding is to insure that the decision to plead guilty is knowing, intelligent, and voluntary and is not meant to inform the defendant of the pitfalls of self-representation attending the trial process." PCR App. Ruling at 6 (citations omitted). This comports with the Supreme Court's holding in *Tovar*, as recognized by the Eighth Circuit in *Page*, that in a guilty plea proceeding, a defendant's constitutional rights are upheld "'when the trial court informs the accused of the nature of the charges against him, of his right to be counseled regarding his plea, and of the range of allowable punishments attendant upon the entry of a guilty plea.'" *Page* at *3 (quoting *Tovar*, 541 U.S. at 81, 124 S. Ct. at 1383).

The record in the present case shows the trial court did exactly what was required under *Tovar* to secure a voluntary, knowing, and intelligent entry of Bolden's guilty plea, and to satisfy Bolden's constitutional right to representation of counsel. The trial court informed Bolden of the nature of each of the two charges to which he was entering a guilty plea, and the range of allowable punishments applicable to each charge. The court repeatedly questioned Bolden regarding the nature of Mr. Bishop's representation.

The court finds, as did the PCR trial court, and consistent with *Page*, that Bolden actually *was* represented by counsel throughout the plea proceeding. Even if Bolden is deemed to have waived his right to counsel with respect to the one charge on which Mr. Bishop was appointed as standby counsel, the court finds Bolden was advised properly of the danger of self-representation before he was allowed to waive his right to counsel.

Because the court finds Bolden's claim lacks merit, his appellate counsel could not have been ineffective in failing to raise the issue on appeal. As a result, the decision of the Iowa Court of Appeals on this issue was not contrary to, or an unreasonable application of, applicable Supreme Court precedent, and Bolden's petition for writ of *habeas corpus* should be denied as to this claim.

### B. Failure to Understand Collateral Consequences of Plea

Bolden argues his appellate counsel was ineffective in failing to challenge the validity of Bolden's guilty pleas because Bolden was not informed properly of all of the consequences of changing his pleas. As before, the respondent argues this issue is procedurally defaulted because it was not raised on direct appeal. Again, however, the viability of the claim that appellate counsel was ineffective depends on the viability of the claim counsel failed to raise on direct appeal. The court therefore turns to consideration of Bolden's claim on the merits.

Bolden specifically claims he was not aware that if he pled guilty, an interlocutory appeal he had filed would be dismissed.[2] At Bolden's PCR trial, Attorney John Bishop testified as follows regarding the interlocutory appeal:

> Q      [By Phil Mears, Bolden's PCR counsel]  Do you remember
>        withdrawing on appeal in connection with what could be
>        referred to as an interlocutory appeal Mr. Bolden took?

_____

[2]The particulars of Bolden's interlocutory appeal are not relevant to consideration of his claim in the present action.

A        [By Mr. Bishop]  Yes, I do.  Mr. Bolden had filed an inter-
locutory appeal and I do not remember what the issue was
about or issues sometime in the middle of the case.  What had
happened then was that I believe the Supreme Court or the
Clerk of the Supreme Court assumed that I was acting as
counsel in that appeal, so they ultimately sent me a notice,
because I hadn't filed – I don't know, for a combined
certificate or what.  And at that point, upon learning that they
assumed I was counsel, I went to Mr. Bolden and we
discussed whether or not I would represent him on this appeal
and it was agreed that I would not.  And so I filed the Motion
to Withdraw at that point.

Q        Did you arrange to have other counsel appointed?

A        No.  It was my understanding that Mr. Bolden wanted to
pursue the appeal on his own.

*Id.* at 8-9 (Appeal App. at 31-32)    Mr. Bishop had no recollection of ever talking with Bolden about what would happen to his interlocutory appeal if he pled guilty.  *Id.* at 11-12 (Appeal App. at 320-21).

At his PCR trial, Bolden testified he was "under the impression that whatever came of []his interlocutory [appeal], it would be decided before there was any trial of any kind [on the burglary charges]."  PCR Trial Tr. at 25 (Appeal App. at 334).  Bolden testified he "hadn't the slightest idea that any issues would have been waived [when he pled guilty] because of the fact Mr. Bishop kept mentioning that [he] could preserve these issues on appeal and that stuck in [his] mind a lot because it was said more than once." *Id.* at 50 (Appeal App. at 359).

The Iowa Court of Appeals held as follows on this claim:

> Bolden also argues that appellate counsel was
> ineffective for failing to challenge the validity of his guilty
> plea because Bolden did not understand that interlocutory
> appeals taken in these cases would be dismissed following the
> entry of his guilty pleas.  To be valid under the Due Process
> Clause, a plea of guilty must be made voluntarily and
> intelligently, with a full understanding of the direct

consequences of the plea. *State v. Boone*, 298 N.W.2d 335, 337 (Iowa 1980). Neither judges nor defense attorneys are required, however, to inform defendants of all indirect and collateral consequences of guilty pleas. *Saadiq v. State*, 387 N.W.2d 315, 325 (Iowa 1986). The distinction between direct and collateral consequences of a plea turns on whether the result represents a definite, immediate, and largely automatic effect on the range of the defendant's punishment. *Id.*

In addressing this issue the district court stated as follows:

> [T]here is no showing that Bolden was harmed by any failure to challenge the adequacy of the plea proceeding on appeal as the colloquy showed he was adequately informed of the penalty he was facing, he received a sentencing concession and he was represented by competent counsel. The trial court did not abuse its direction in not allowing Bolden to withdraw his pleas of guilty.

The court's findings enjoy abundant support in the record, and we adopt them as our own. Bolden is unable to show that had his appellate counsel raised this issue, the result of his appeal would have been different. Moreover, contrary to Bolden's assertions, there is not sufficient evidence in the record to demonstrate that defense counsel misinformed Bolden of the consequences of the plea. *See Meier v. State*, 337 N.W.2d 204, 207 (Iowa 1983) (misstatements by counsel may [a]ffect defendant's ability to make a knowing and intelligent choice). Accordingly, there is no merit in this contention, and we affirm on this issue.

PCR App. Ruling at 7-8.

The Supreme Court has provided specific guidance on this issue. In overruling the Iowa Supreme Court's instruction that a court must provide a *pro se* defendant pleading guilty with specific, scripted admonishments, the *Tovar* Court observed as follows:

> This Court recently explained, in reversing a lower court determination that a guilty plea was not voluntary:

> "[T]he law ordinarily considers a waiver knowing, intelligent,
> and sufficiently aware if the defendant fully understands the
> nature of the right and how it would likely apply *in general* in
> the circumstances – even though the defendant may not know
> the *specific detailed* consequences of invoking it." *United
> States v. Ruiz*, 536 U.S. 622, 629, 122 S. Ct. 2450, 153 L.
> Ed. 2d 586 (2002) (emphasis in original). We similarly
> observed in *Patterson*: "If [the defendant] . . . lacked a full
> and complete appreciation of all of the consequences flowing
> from his waiver [of counsel], it does not defeat the State's
> showing that the information it provided to him satisfied the
> constitutional minimum." 487 U.S. at 294, 108 S. Ct. 2389
> (internal quotation marks omitted). . . . "[T]he information
> a defendant must have to waive counsel intelligently will
> "depend, in each case, upon the particular facts and circum-
> stances surrounding that case." *Johnson [v. Zerbst]*, 304
> U.S. [458], 464, 58 S. Ct. 1019[, 1023, 82 L. Ed. 2d 1461
> (1938)]; [citation omitted].

*Tovar*, 541 U.S. at 92, 124 S. Ct. at 1389-90.

In *United States v. Ruiz*, cited by the *Tovar* Court, the Supreme Court considered, *inter alia*, whether prosecutors had to disclose material impeachment information before a defendant could make a knowing, intelligent, and voluntary waiver of counsel in a guilty plea proceeding. In holding such disclosure is not required under the Constitution, the Court observed as follows:

> Of course, the more information the defendant has, the more
> aware he is of the likely consequences of a plea, waiver, or
> decision, and the wiser that decision will likely be. But the
> Constitution does not require the prosecutor to share all useful
> information with the defendant,. *Weatherford v. Bursey*, 429
> U.S. 545, 559, 97 S. Ct. 837, 51 L. Ed. 2dc 30 (1977)
> ("There is no general constitutional right to discovery in a
> criminal case"). And the law ordinarily considers a waiver
> knowing, intelligent, and sufficiently aware if the defendant
> fully understands the nature of the right and how it would
> likely apply *in general* in the circumstances – even though the
> defendant may not know the *specific detailed* consequences of
> invoking it. A defendant, for example, may waive his right

to remain silent, his right to a jury trial, or his right to counsel even if the defendant does not know the specific questions the authorities intend to ask, who will likely serve on the jury, or the particular lawyer the State might otherwise provide. *Cf. Colorado v. Spring*, 479 U.S. 564, 573-575, 107 S. Ct. 851, 93 L. Ed. 2d 954 (1987) (Fifth Amendment privilege against self-incrimination waived when defendant received standard *Miranda* warnings regarding the nature of the right but not told the specific interrogation questions to be asked).

. . . [T]his Court has found that the Constitution, in respect to a defendant's awareness of relevant circumstances, does not require complete knowledge of the relevant circumstances, but permits a court to accept a guilty plea, with its accompanying waiver of various constitutional rights, despite various forms of misapprehension under which a defendant might labor. *See Brady v. United States*, 397 U.S. [742,] 757, 90 S. Ct. 1463[, 25 L. Ed. 2d 747 (1970)] (defendant "misapprehended the quality of the State's case"); *ibid.* (defendant misapprehended "the likely penalties"); *ibid.* (defendant failed to "anticipate" a change in the law regarding relevant "punishments"); *McMann v. Richardson*, 397 U.S. 759, 770, 90 S. Ct. 1441, 25 L. Ed. 2d 763 (1970) (counsel "misjudged the admissibility" of a "confession"); *United States v. Broce*, 488 U.S. 563, 573, 109 S. Ct. 757, 102 L. Ed. 2d 927 (1989) (counsel failed to point out a potential defense); *Tollett v. Henderson*, 411 U.S. 258, 267, 93 S. Ct. 1602, 36 L. Ed. 2d 235 (1973) (counsel failed to find a potential constitutional infirmity in grand jury proceedings).

*Ruiz*, 536 U.S. 622, 629-31, 122 S. Ct. 2450, 2455-56 153 L. Ed. 2d 586 (2002).

Application of these authorities to Bolden's claim results in a clear finding that his failure to understand his interlocutory appeals would be dismissed upon entry of his guilty pleas is insufficient to render his pleas invalid. The court finds Bolden's guilty pleas were made voluntarily and intelligently, with a full understanding of the *direct* consequences of the plea. The court therefore finds this claim lacks merit, with the result that appellate counsel could not have been ineffective in failing to raise the claim on

appeal. As a result, the decision of the Iowa Court of Appeals on this issue was not contrary to, or an unreasonable application of, applicable Supreme Court precedent, and Bolden's petition for writ of *habeas corpus* should be denied as to this claim.

## VI. CONCLUSION

For the reasons discussed above, **IT IS RECOMMENDED**, unless any party files objections[3] to the Report and Recommendation in accordance with 28 U.S.C. § 636 (b)(1)(C) and Fed. R. Civ. P. 72(b) within ten (10) days of the service of a copy of this report and recommendation, that Bolden's petition for writ of *habeas corpus* be denied in its entirety.

**IT IS SO ORDERED.**

**DATED** this 6th day of May, 2005.

_____
PAUL A. ZOSS
MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT

---

[3]Objections must specify the parts of the report and recommendation to which objections are made. Objections must specify the parts of the record, including exhibits and transcript lines, which form the basis for such objections. *See* Fed. R. Civ. P. 72. Failure to file timely objections may result in waiver of the right to appeal questions of fact. *See Thomas v. Arn*, 474 U.S. 140, 155, 106 S. Ct. 466, 475, 88 L. Ed. 2d 435 (1985); *Thompson v. Nix*, 897 F.2d 356 (8th Cir. 1990).